UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| INTERNATIONAL INSURANCE ) <br> BROKERS, LTD., LLC, ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v.  ) <br>  ) <br> TEAM FINANCIAL, INC., et al., ) <br>  ) <br>  ) <br> Defendants. ) | Case No. 07-CV-0082-CVE-SAJ |

**OPINION AND ORDER**

Now before the Court is Plaintiff's Motion to Reconsider Opinion and Order Dismissing Defendants Team Financial, Inc., Mystic Capital Advisors Group, LLC, and Kevin P. Donoghue (Dkt. # 84). Plaintiff International Insurance Brokers, Ltd., LLC ("IIB") asks the Court to reconsider its order (Dkt. # 78) dismissing defendants Team Financial, Inc. ("TFIN"), Mystic Capital Advisors Group, LLC ("Mystic"), and Kevin P. Donoghue ("Donoghue") for lack of personal jurisdiction. Defendants respond that plaintiff has not presented grounds for reconsideration under Fed. R. Civ. P. 59(e) and its motion should be denied.

**I.**

On February 7, 2005, IIB entered into a Stock Purchase Agreement (the "SPA"), whereby defendant Team Bank, N.A. ("TBNA") agreed to sell to IIB all of the issued and outstanding common stock of Team Insurance Group, Inc. ("TIG"). Defendant Robert J. Weatherbie ("Weatherbie") signed the SPA as the President of TBNA. IIB and TBNA were the only parties to the SPA. As a condition precedent to signing the SPA, IIB required that defendant TFIN, which

was and is the sole owner of all the issued and outstanding shares of TBNA, sign an Inducement Agreement (the "Inducement Agreement"). See Dkt. # 35, Ex. C.

Under the terms of the Inducement Agreement, TFIN represented and warranted to IIB that, at the time of the TIG stock sale from TBNA to IIB, TFIN would have no claims or demands against TIG. The Inducement Agreement also contained, inter alia, a non-interference term, a confidentiality agreement, and a Kansas forum selection clause. Dkt. # 35, Ex. C., at 5. Weatherbie signed the Inducement Agreement as the Chairman and Chief Executive Officer of TFIN. The only parties to the Inducement Agreement were IIB and TFIN.

Mystic, a financial consulting company, advised TBNA regarding the acquisition of TIG in 2002. In 2003 and 2004, Mystic prepared an annual valuation report and goodwill impairment analysis with respect to TIG. Donaghue, a Managing Director at Mystic, was the primary person responsible for advising TBNA regarding the TIG sale to IIB.

In its prayer for relief, IIB claimed that TBNA breached the terms, conditions, and intent of the SPA. IIB also brought claims of fraud, misrepresentation, and fraudulent inducement against each defendant. Specifically, IIB alleged that defendants made false representations regarding TIG's premium trust account, the rate of commissions paid or to be paid by TIG, TIG's aggregate revenues, and the maintenance of relations and good will with suppliers, customers, and others having business relationships with TIG. Lastly, IIB brought a claim of negligent misrepresentation against each defendant. See Dkt. # 44.

Defendants TFIN, Mystic, and Donoghue (collectively "defendants") moved to dismiss plaintiff's complaint for lack of personal jurisdiction. The Court reviewed the briefs, affidavits, and other documents filed by the parties and dismissed plaintiff's claims against defendants. IIB now

seeks to alter or amend the Court's Opinion and Order on the grounds that: (1) the Court failed to consider evidence of TFIN's employment of Oklahoma employees; and (2) the Court failed to consider IIB's allegations of fraud within its specific jurisdiction analysis. IIB also offers allegedly "recently discovered" evidence in support of its claims. See Dkt. # 84, at 2-8.

## II.

"The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.' Instead the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991). Plaintiff's motion was filed within ten days of the Opinion and Order, so the Court will treat it as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e). Allender v. Raytheon Aircraft Co., 439 F.3d 1236, 1242 (10th Cir. 2006). The Tenth Circuit has stated that "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). In a Rule 59(e) motion, a party may not attempt to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." Id.

## III.

In its Opinion and Order, the Court found that plaintiff failed to establish general or specific personal jurisdiction over defendants. To establish general or specific jurisdiction, a plaintiff must make a "prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." OMI Holdings, Inc. v. Royal Ins. Co. of

Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). In essence, a plaintiff must establish the existence of sufficient minimum contacts with the forum state to permit a court to assert personal jurisdiction over a nonresident defendant.[1]  See Dkt. # 78, at 4-5. The Court addresses plaintiff's arguments concerning TFIN first and then Mystic and Donoghue.

### A. TFIN

With regard to general jurisdiction, the Court found that the actions of TBNA and its agents could not be attributed to its wholly-owned subsidiary, TFIN, and that the Inducement Agreement was not a basis for this suit involving the SPA.[2] See Dkt. # 78, at 5-6. The Court concluded that it did not have general jurisdiction over TFIN. Id. at 8. TFIN's limited and intermittent contacts with Oklahoma did not rise to the level of "continuous and systematic," in part, because plaintiff had failed to submit evidence to counter the affidavit of TFIN's Chairman and Chief Executive Officer.[3] Id. at 7.

---

[1] A plaintiff must show also that "the exercise of personal jurisdiction over the defendant [does not] offend[] 'traditional notions of fair play and substantial justice.'" OMI, 149 F.3d at 1091 (quotation marks and citation omitted). As plaintiff's motion to reconsider does not involve this second part of the due process inquiry, the Court refers only to minimum contacts.

[2] Therefore, the Court has already addressed plaintiff's assertion that the "statements made by TFIN to IIB through Weatherbie and other employees are part of the basis for TFIN's contacts with the State of Oklahoma." See Dkt. # 78, at 5-6. The Court will not reconsider this issue.

[3] TFIN's Chairman and Chief Executive Officer swore that: "(1) TFIN's principal place of business is in Kansas, and it is incorporated in Kansas; (2) TFIN is not licensed to do business in Oklahoma; (3) TFIN does not have any offices, employees, officers, or agents in Oklahoma; (4) TFIN does not travel to Oklahoma by way of salespersons; (4) as of March 8, 2007, TFIN's records did not list any shareholders residing in Oklahoma; (5) TFIN does not maintain any bank accounts in Oklahoma; (6) TFIN does not pay taxes in Oklahoma; (7) TFIN does not solicit business in Oklahoma and does not generate any revenue through activity in Oklahoma; and (8) TFIN does not own, lease, or control any real or personal property in Oklahoma." See Dkt. # 78, at 7.

Plaintiff maintains that the Court erred in its conclusion, because certain "evidence was presented to this Court and is absent from the analysis set forth in the Order." Dkt. # 84, at 2. Plaintiff points to: (1) its statement that "TFIN had employees in Oklahoma," and (2) the Registration Certificate from the Oklahoma Employment Security Commission ("OESC") granting TFIN authority to employ persons in the State of Oklahoma, see Dkt. # 45, Ex. D. Notwithstanding the principle that "revisiting the issues already addressed is not the purpose of a motion to reconsider," Van Skiver, 952 F.2d at 1243 (internal quotation marks and citation omitted), the Court finds that plaintiff's argument lacks merit. First, a statement in a brief is not "evidence" to counter an affidavit. Second, even if plaintiff's proffered evidence, the Registration Certificate, in fact countered TFIN's affidavit – which it does not – the certificate neither impacts the analysis nor amounts to "clear error" under Rule 59(e). Plaintiff still failed to sufficiently establish minimum contacts. A Registration Certificate certifies that an employer is registered with the OESC; it is not proof that the employer has any employees working in Oklahoma. General jurisdiction is premised on satisfying a number of factors, only two of which reference "employees" in the state. See Dkt. # 78, at 7 (quoting Soma Medical Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1295-96 (10th Cir. 1999)). A simple Registration Certificate, without more, will not demonstrate either employees working in the state or continuous and systematic contacts.

Further, to the extent that plaintiff offers "additional" supporting evidence, Rule 59(e) permits consideration of only "new evidence previously unavailable." Does, 204 F.3d at 1012. IIB does not submit any previously unavailable evidence. Rather, it claims that it has "recently identified" a W-2 Wage and Tax Statement for one alleged TFIN employee residing in Oklahoma. Dkt. # 84, at 3; id., Ex. A. First, merely because one employee of TFIN resided in Oklahoma at the

5

time of the issuance of the W-2 is not proof that the employee is or was employed in Oklahoma rather than in Kansas. Second, the W-2 was issued in 2004, and plaintiff provides no explanation as to why it failed to previously submit this evidence. Id. "Recently identified" and "previously unavailable" are clearly not synonymous.

With regard to specific jurisdiction, the Court found that TFIN did not have the requisite minimum contacts with Oklahoma. Dkt. # 78, at 9-10. Plaintiff claims that "this Court overlooked the fraud alleged by IIB" and that these "specific acts of fraud . . . are enough to establish the minimum contacts."[4] Dkt. # 84, at 4. This Court disagrees. First, the Court did not overlook the fraud alleged by IIB because it explicitly referenced such claims in the Opinion and Order. See Dkt. # 78, at 3. Second, minimum contacts are not analyzed separately as contract or tort-related. The specific jurisdiction inquiry focuses on whether the contacts with the forum state arise from the litigation. If the litigation involves fraud claims, which stem from telephone calls, e-mails, or written documents exchanged in the course of contractual negotiations, specific jurisdiction is assessed in the minimum contacts framework. See Soma, 196 F.3d at 1298 ("We therefore examine the quantity and quality of [defendant]'s contacts with Utah [arising from the breach of contract and negligence claims], including 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" (quoting Burger King Corp., 471 U.S. at 479)); Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1534 (10th Cir. 1996) (examining the contacts that arose from the negligent misrepresentation and fraudulent inducement claims in the minimum contacts framework); Wegerer v. First Commodity Corp. of Boston, 744 F.2d 719, 727-28 (10th Cir. 1984) (affirming the district court's determination that

---

[4] IIB offers no legal authority to support this assertion.

defendant had sufficient minimum contacts, which arose from the fraudulent inducement to contract action). Moreover, as highlighted by TFIN, plaintiff does not challenge the Court's conclusions that (1) the Inducement Agreement did not sufficiently relate to IIB's claims for purposes of specific jurisdiction, and (2) even if the Inducement Agreement did sufficiently relate to this litigation, TFIN's negotiation and execution of the Inducement Agreement failed to confer personal jurisdiction. Dkt. # 94, at 6. Therefore, the Court will not reconsider its analysis.

Plaintiff further maintains that "this Court fail[ed] to acknowledge that Weatherbie was acting dually in his roles of Chairman and Chief Executive Officer of TFIN, [sic] Weatherbie made fraudulent statements to IIB." Dkt. # 84, at 4. This new argument, however, may not be raised under Rule 59(e). To begin, plaintiff includes no citation to its pleadings or exhibits wherein it made such an assertion. Moreover, IIB expressly pled in the First Amended Complaint that Weatherbie signed the SPA in his capacity as President of TBNA. See Dkt. # 44, at 19. The Court relied on this allegation in its Opinion and Order. See Dkt. # 78, at 9. Plaintiff may not now seek to obfuscate those contacts attributable to TBNA and those contacts attributable to TFIN.

To bolster this attempted obfuscation, plaintiff submits a financial statement filed with the U.S. Securities and Exchange Commission ("SEC"), which Weatherbie signed as President of TFIN. See Dkt. # 84, Ex. B. Plaintiff asserts that this SEC document exhibits Weatherbie's "acting dually in his roles of Chairman and Chief Executive Officer of TFIN" and TBNA. Dkt. # 84, at 4-5. The Court finds that the "recently discovered" SEC filing is not probative on this issue. Plaintiff may not offer "new" evidence contradicting its original position. Further, plaintiff had access to this public document published in 2005 and offers no reason for not submitting it earlier. Finally, as TFIN explained, "[a]lthough TBNA owned TIG, TFIN filed [the SEC document] regarding TIG

because TFIN reports its financial results on a consolidated basis." Dkt. # 35, at 7 n.2. The SEC document does not change the Court's analysis. The Court concludes, therefore, that it correctly analyzed TFIN's Oklahoma contacts in accordance with well-settled law.

### B. Mystic and Donoghue

With respect to general jurisdiction, the Court determined that Mystic's and Donoghue's contacts with Oklahoma were limited, notwithstanding the undisputed fact that they had conducted some business in Oklahoma. Dkt. # 78, at 10-11. Plaintiff argues that the Court relied on "Donoghue's bland statement" in his affidavit that he had "visited Oklahoma on two occasions to meet with other insurance agencies of potential interest to TIG" in arriving at its determination. Dkt. # 84, at 5-6. Plaintiff offers "recently discovered documents" to support this assertion. The Court finds that the items attached to IIB's motion fail to qualify as newly discovered evidence, because these documents could have been earlier presented.[5] As highlighted by Mystic and Donoghue, "[a]ll of the documents appear to have come from old TIG records that IIB obtained when it acquired TIG from TBNA . . . . [N]one are documents IIB obtained through discovery in this case." Dkt. # 93, at 6. Consequently, the Court finds that IIB does not present any previously unavailable evidence as required under Rule 59(e). See Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir.1994) (holding that a party offering "newly discovered evidence" must show that it exercised due diligence in attempting to discover the evidence).

---

[5] These documents include copies of: checks payable to Mystic from TIG, invoices from Mystic to TIG, a comprehensive assessment of TIG conducted by Mystic, a contract between Mystic and TIG, a letter from TIG to the TFIN Board of Directors, four e-mails from Donoghue to TIG, and two e-mails from Donoghue to a TIG employee. Dkt. # 84, Ex. C – N.

With respect to specific jurisdiction, the Court determined that Mystic's and Donoghue's numerous telephone calls and e-mails with IIB were insufficient to establish minimum contacts with Oklahoma. Plaintiff challenges the Court's finding. Dkt. #84, at 8. According to plaintiff, "this Court again focuses its analysis upon a counting of Mystic and Donoghue's 'business' activities within the State of Oklahoma and does not apply this analysis to IIB's claims of fraud against Mystic and Donoghue." Id. at 7. Given the Court's assessment of plaintiff's fraud allegations concerning TFIN, the Court will briefly reiterate its above conclusion.

The specific jurisdiction inquiry focuses on whether the contacts with the forum state arise from the litigation. Hence, if the fraud claims arise from the same set of operative facts as do the contract claims, the minimum contacts analysis does not change. See Soma, 196 F.3d at 1298 ("We therefore examine the quantity and quality of [defendant]'s contacts with Utah [arising from the breach of contract and negligence claims], including 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" (quoting Burger King Corp., 471 U.S. at 479)). The specific jurisdiction test inspects the quantity and quality of the contacts – not the nature or validity of the underlying claims. Accordingly, the Court concludes that it correctly analyzed Mystic's and Donoghue's Oklahoma contacts in accordance with well-settled law.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reconsider Opinion and Order Dismissing Defendants Team Financial, Inc., Mystic Capital Advisors Group, LLC, and Kevin P. Donoghue (Dkt. # 84) is **denied**.

**DATED** this 28th day of September, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT